**Application of Simon L. RUSKIN, Deceased, Union Carbide Corporation, Assignee.**

**Patent Appeal No. 6485.**

United States Court of Customs and Patent Appeals.

Feb. 18, 1960.

Jackson B. Browning, New York City, Paul A. Rose, Washington, D. C. (Frank E. Robbins, Rochester, N. Y., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the final rejection of claims 1, 4, 7, 11

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell* pursuant to provisions of Section 294(d), Title 28 United States Code.

and 12 in application Serial No. 484,079, filed January 25, 1955, entitled "Antibiotic Compounds." Claims 2, 3, 5, 6, 8 and 9 have been held to be withdrawn from consideration under Rule 142(b), 35 U.S.C.Appendix, as not readable on the elected species, erythromycin. The application is stated by appellant to be a continuation of application Serial No. 479,235, filed December 31, 1954, now abandoned.

The invention is directed to the preparation of certain antibiotic salts and esters. The products claimed are those produced by the reaction of one of erythromycin, carbomycin and tetracycline with B-sulfopropionic acid anhydride. The reaction proceeds under anhydrous conditions in a solvent such as dioxane, ethanol, or a mixture thereof in the presence of an alkali hydroxide, such as sodium hydroxide, to produce the alkali salts. Alternatively the antibiotics and B-sulfopropionic anhydride may be dissolved in an anhydrous solvent and the resulting solution concentrated to a solid; which solid may then be redissolved in an anhydrous solvent to which has been added the alkali hydroxide, after which this second solution is evaporated in vacuo to dryness, yielding crystalline or powdery products.

Appellant in his specification alleges several advantages in the particular salts disclosed which it is said do not inhere in erythromycin and the prior art derivatives thereof. The salts produced are said to be free from the bitter taste which is characteristic of erythromycin. The disclosed erythromycin salts are also said to be freely water soluble, and to have the very desirable pH range of 7.5 to 8, the level at which erythromycin is stated to be most stable, whereas the prior art soluble salts of erythromycin allegedly are soluble only at acidic pHs, a less stable range. The combination of these properties more readily permits the use of these salts for oral and nasal administration and for intramuscular injection. Advantages are also alleged for the salts of carbomycin and tetracycline.

The claims on appeal are:

1. The sodium salt of erythromycin sulfopropionate.

4. The reaction product of B sulfopropionic anhydride and erythromycin.

7. The product of the reaction in an anhydrous medium in the presence of an alkali hydroxide of erythromycin base and B sulfopropionic anhydride.

11. The reaction product of B sulfopropionic anhydride with a substance selected from the group consisting of erythromycin, carbomycin and tetracycline.

12. The product of the reaction in an anhydrous medium in the presence of a substance selected from the group consisting of alkali and alkaline earth hydroxides of B sulfopropionic anhydride with a substance selected from the group consisting of erythromycin, carbomycin and tetracycline.

The references relied on are:

| | | |
|---|---|---|
| Bunch et al. | 2,653,899 | Sept. 29, 1953 |
| Conover | 2,699,054 | Jan. 11, 1955 |
| Hochstein et al. (I) | "J. Am. Chem. Soc." (1953) pp. 5456 and 5468 | Vol. 75 |
| Hochstein et al. (II) | "J. Am. Chem. Soc." (Oct. 20, 1954) pp. 5080–5082 | Vol. 76 |
| Flynn et al. | "J. Am. Chem. Soc." (June 20, 1954) pp. 3121–3126 | Vol. 76 |
| "Antibiotics Annual, 1953–1954" | (Dec. 1953) pp. 514–521 | |

Hochstein et al. (I) disclose diacetyl-terramycin, the reaction product, in anhydrous dioxane, of Terramycin and acetic anhydride. Terramycin is oxytetracycline.

Hochstein et al. (II) describe acetyl Magnamycin B, the reaction product of Magnamycin B, structurally and as an antibiotic very similar to carbomycin, and acetic anhydride.

Flynn et al. teach the acetylation of erythromycin with acetic anhydride using pyridine as a catalyst to form erythromycin acetate. The Flynn et al. publication further discloses erythromycin oxalate, benzoate, propionate, and several carbonates. Erythralosamine, described as a product resulting from mild acid hydrolysis of erythromycin, is stated to be hydrolyzable to form, among other things, propionic acid.

"Antibiotics Annual" informs us that erythromycin may be combined with cyclic acid anhydrides, mentioning as specific examples the succinic, maleic, phthalic and glutaric anhydrides, to form the corresponding esters.

The Conover patent shows that the amphoteric tetracycline may be reacted with either acids or bases to form the corresponding acidic or basic salts, and as an illustration of this, recites the reaction of tetracycline with sodium hydroxide.

The Bunch et al. patent discloses that erythromycin may be treated with acids to form the acid addition salts, illustrative examples of these salts being the citrate, mandelate, oleate, palmitate, myristate, stearate, oxalate, sulfate and hydrochloride.

The Board of Appeals rejected claims 1, 4, 7, 11 and 12 as unpatentable over Hochstein et al. (I), Hochstein et al. (II), Flynn et al. and "Antibiotics Annual," insofar as the claimed compounds were esters, and over Conover and Bunch et al. insofar as the claims were drawn to salts. The board stated, with respect to the art rejection made by the examiner, that "the basis of his rejection on the prior art is that in absence of some

evidence of superiority or unexpected advantage there is no invention in appellant's choice of another acid to form these esters and/or salts of the claimed antibiotics." As was acknowledged by the board and as is clear from the preceding description of the prior art, there is no teaching of appellant's particular claimed compounds. However, it was the board's opinion that in the absence of any evidence to show that the claimed esters and salts presented improvements over the prior art in the desirable properties attributed to them by appellant, they were unpatentable thereover. The use of the B–sulfopropionic anhydride in place of the acids disclosed by the references must have been considered to be obvious.

Appellant asserts that the burden of demonstrating superiority, or even of making comparative tests, "is beyond the legal authority of the Patent Office to impose," in this type of case. He further alleges that the B-sulfopropionic anhydride esters and salts of the claimed antibiotics meet all of the statutory requirements for patentability, including lack of obviousness, especially pointing out that the prior art does not suggest the reaction of the antibiotics with organic sulfonic acids, let alone the utilization of a dibasic acid containing both sulfonic and carboxylic acid groups.

▮ Novelty and utility being conceded, the sole substantive question of patentability before us is whether the subject matter sought to be patented would have been obvious to one of ordinary skill in the antibiotics are in the light of the references of record. And to bring this case into proper focus, we might mention that at all times it is important to bear in mind that which is being claimed. We are here concerned with claims to *compounds*, not process claims.

▮ For purposes of discussion, claim 4 will be considered first. Because erythromycin has several potentially reactive groups, and because B-sulfopropionic acid anhydride has two potentially reactive acidic radicals, claim 4 encompass-

es a number of possible compounds. To this the parties are agreed. At least one of those compounds is erythromycin sulfopropionate. Although it may be that some of the reaction products within the claim's intended scope are not, strictly speaking, propionates,[1] since appellant has characterized them as propionates, we shall assume that at least some are present.

The references disclose the following esters and salts of erythromycin: the acetate, succinate, maleate, phthalate, glutarate (all derived from the anhydrides); the oxalate, citrate, oleate, palmitate, mandelate, myristate, stearate, sulfate, and hydrochloride; and the benzoate, propionate, and several carbonates (from the acyl derivatives of the corresponding acids).

The board's position, in effect, is that several esters of erythromycin being known, any other ester is presumptively obvious. The solicitor seeks to narrow the basis for the board's holding, referring especially to page 3123 of the Flynn reference. At one place on that page, erythralosamine, a mild acid hydrolysis product of erythromycin, is said to be hydrolyzable (with 1 N NaOH) to liberate among other things, propionic acid. To say, however, that this suggests reacting propionic acid with erythralosamine, let alone erythromycin, or to form a propionate of either, strains credulity.

At another portion of page 3123 of Flynn, erythromycin propionate is disclosed. While it is made by reacting propionyl chloride with erythromycin, probably in the presence of an alkali hydroxide, the propionate itself is disclosed. The board did not refer to this compound for reasons unknown. It is not clear whether the solicitor was referring to this teaching or to the propionic acid mentioned above. However, since in our opinion the propionate disclosed is the closest to the claimed compound, we shall consider the claim in the light of that showing. The position of the Patent Office then, would be that any substituted erythromycin propionate is presumptively obvious. Such a stand means that any substituent in the α or β positions in the propionate radical is obvious.

We find no teaching in the prior art of record which would lead one skilled in the art to the sulfonate, rather than the chloride, nitrate, or any other of the thousands of possible substituents or combinations thereof. Although it may be broadly stated that all compounds may be substituted in various manners, nothing suggests the sulfonate, which group is not taught by the prior art of record as a substituent in any esterified or substituted erythromycin. This is the difficulty we have with both the board's broad position and the solicitor's equally broad, but somewhat different, stand that all esters and all substituted propionates of erythromycin are *prima facie* obvious. We believe that the Patent Office has drawn unwarranted inferences from several broad chemical principles, and that *without more to show that researchers would be led to the sulfonic acid substituted propionate than is present in the record of this case, we find the conclusion contended for indefensible.*

The reasoning by which we have found claim 4 to be allowable over the art of record obviously applies with equal force to claims 1, 7, 11 and 12, which claims, therefore, are also allowable thereover.

The board also agreed with the examiner's position that claims 1, 4 and 7 and claims 10 and 12 were unduly multiplied. The solicitor in his brief and at oral argument indicated that he could suggest no substantial basis for supporting that rejection. It is clear to us that the claims within the two groups differ in scope from each other. Consequently the board's rejection of the claims as being unduly multiplied is reversed.

---

1. If, as the board states, it is possible for the sulfonic acid group of the B-sulfopropionic acid anhydride to be linked to erythromycin through one of its hydroxyl groups, then such a compound would not be a propionate, but rather a sulfonate.

Additionally, the Board of Appeals found that the claims "did not properly define the invention because it could not be determined from the claims or the description what the products are," pointing to the fact that the antibiotics claimed have numerous potentially reactive groups, and concluding that it is not possible to ascertain accurately from the specification and claims which of the salts and esters of the antibiotics are formed. In connection with this ground of rejection, the appellant has indicated a willingness, for example, in claim 1, to change "the" to "a" or to change "salt" to "salts." It is appellant's position that claims of that type are commonly accepted as properly definite by the Patent Office.

The solicitor, in his brief, states that claim 1 is indefinite because the definite article "the" is used to denote that which, concededly, may be several possible different structures. We find that claim 1 in its present form is indefinite and therefore affirm the board's rejection of that claim.

As respects claims 4, 7, 11 and 12, it is clear to us that "the reaction product" and "the product of the reaction" encompass all of that which is produced by the reactions, be the product a mixture of two or a dozen compounds. These claims are certainly free of the indefiniteness attributed to them by the board as construed by the solicitor. We find, therefore, that the rejection of the claims based upon improper definition is untenable, and accordingly it is reversed.

The board affirmed the examiner's rejection of claims 4 and 11 as incomplete product by process claims, the reason assigned being that the claims failed to recite sufficient conditions to assure obtaining the desired compounds. Again appellant points out that this particular type of claim has been repeatedly accepted by the Patent Office as sufficiently complete to define the product, citing illustrative prior art patents to support his contention.

The only reason assigned by the Board of Appeals for these claims being improper product by process claims was that they were incomplete. We shall limit our discussion accordingly.

The specification indicates that the intermediates of claims 4 and 11 may be prepared by reacting the components under anhydrous conditions at room temperature. As an example of the preferred anhydrous medium, a mixture of ethanol and dioxane is given. The utilization of an anhydrous medium is the only condition which it might be said is necessary to the claim in the light of the specification. The board has stated that it could not be assured that the desired product would be formed absent a further recital of conditions. Of course the claim requires that something be formed, that some reaction take place. There is nothing in the board's decision or in the record which indicates that something other than the compounds to which the specification is directed will be produced by the reaction of erythromycin and B-sulfopropionic anhydride. Absent such a showing, we feel that the processes of claims 4 and 11 are sufficiently complete to assure obtaining the desired claimed products. The rejection of these claims as incomplete is reversed.

The reasons assigned by the board for denying appellant claims 4, 7, 11 and 12 having been found to be in error, the decision of the Board of Appeals as to those claims is reversed. The rejection of claim 1 is affirmed.

Modified.